Upon review of the record and after hearing arguments of counsel for the parties, the Full Commission, upon reconsideration of the evidence, affirms the Decision and Order of the Deputy Commissioner, with some modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are properly before the court, and the court has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
 ***********
The Full Commission finds as fact the following:
 FINDINGS OF FACT
1. On 19 May 1991 at approximately 12:23 a.m., Nicolas Vasquez, a seventeen-year-old, unlicensed male, was driving a 1975 Pontiac motor vehicle in a northerly direction along U.S. 421 near its intersection with Rural Paved Road 2119 in Chatham County, south of Siler City, North Carolina. Vasquez was a native of Mexico and could not understand English. He did not testify in this case.
2. On 19 May 1991, U.S. 421 was being resurfaced for several miles along Vasquez's course of travel prior to approaching its intersection with RPR 2119. As a result of the resurfacing, the normal painted edge lines and center lines of the highway were not present. However, in the area immediately preceding RPR 2119, pre-markings of white paint had been placed in the center of the highway and were visible to drivers in that vicinity. The resurfacing had raised the height of the pavement an additional one and one half to two inches from the unpaved shoulder.
3. Along the entire resurfacing project, signs stating "no passing" and "unmarked pavement ahead" were placed every half-mile along the project alternating at such half-mile intervals with alternative placement of "no passing" and "unmarked pavement" signs in the opposite direction of travel. "Low shoulder" signs were placed as needed in the discretion of William McNeil, the Department of Transportation inspector on site. At the beginning and end of the repaving project, signs were posted warning of "construction zone," "low shoulder," "no passing," and "unmarked pavement ahead." These signs were in English.
4. While traveling north on U.S. 421, prior to the intersection of U.S. 421 with RPR 2119, the Vasquez vehicle ran off the right side of his lane of travel such that at least the right front wheel of his vehicle was off the roadway and on the shoulder. The Vasquez vehicle traveled for an unknown distance off the road, at least partially, and then fully re-entered U.S. 421 at a point approximately 18 feet north of a construction seam where the resurfacing of U.S. 421 had ended. Vasquez did not have control of his vehicle when it re-entered U.S. 421. He proceeded 92 feet in a northwest direction across his own lane of travel and into the oncoming southbound lane, where he collided head on with a 1989 Dodge vehicle driven by Ruth Shaw.
5. Mrs. Shaw was killed instantly in the accident. The Shaw vehicle came to rest off the western side of U.S. 421 in an area off the shoulder and traveled portion of the road. The Vasquez vehicle came to a rest on the west side of U.S. 421 almost at its intersection with RPR 2119, with the rear of the vehicle partially on the southbound lane of U.S. 421. Vasquez abandoned his vehicle.
6. At approximately 4.30 a.m. on 19 May 1991, Trooper Allan Zimmerman, the investigating highway patrolman, learned that an Hispanic male was near a bridge located six-tenths of a mile south of the accident scene. Trooper Zimmerman found Vasquez under a bridge at that location. Trooper Zimmerman determined that Vasquez was the driver of the accident vehicle and arrested him.
7. Trooper Zimmerman, in investigating and observing the accident site, found no ruts, gouges, brake, or tire marks in the shoulder area where the Vasquez vehicle ran off and re-entered the roadway. Trooper Zimmerman did not find any evidence of a hard braking action by Vasquez. The trooper did not know the course of travel of the Vasquez vehicle before it re-entered U.S. 421 and struck the Shaw vehicle.
8. Along the eastern side of U.S. 421, prior to the point of re-entry of the Vasquez vehicle, there was an area roadway ten to twelve feet in length where the shoulder was six to eight inches below the resurfaced roadway (the "drop-off"). The drop-off was obscured by grass which had grown flush with the pavement edge along U.S. 421.
9. Department of Transportation inspector McNeil was at the accident area a few days before 19 May 1991, when the contractor was resurfacing the road. McNeil was overseeing the inspection of the resurfacing every 500 to 1,000 feet in order to ensure that a proper amount of new asphalt was laid. McNeil was located primarily in the middle of the lane and did not specifically check or measure drop-offs along the shoulder. He did not see nor could he have seen the drop-off because it was obscured by grass and because of the angle of his view. There is no evidence that, on 19 May 1997, McNeil or any other named employee of the Department of Transportation had an affirmative duty to discover the drop-off.
10. Before the 19 May 1991 accident, no employee or agent of the Department of Transportation had actual knowledge of the drop-off, and no law enforcement officer had advised the Department of Transportation of a drop-off in the area or anywhere near U.S. 421.
11. Department of Transportation engineer Marty Tillman discovered the drop-off on or about 20 May 1991 when he drove his vehicle directly into it. Inspector McNeil also discovered the drop-off on or about 20 May 1991 when he almost stepped into it.
12. In resurfacing the area of U.S. 421 in question, and at the time of the accident involving Mrs. Shaw, the Department of Transportation's named employees did not know and, in the exercise of reasonable diligence, had no reason to know of the drop-off.
13. The Department of Transportation did not provide inadequate or improper signs along the U.S. 421 resurfacing project. The Department of Transportation could have placed an additional sign at the drop-off and would have done so if it had been aware of the drop-off. However, even if an additional sign had been placed at the drop-off on 19 May 1991, the evidence fails to show that the accident would likely have been prevented. Vasquez could not read English and thus would likely have not understood or heeded an additional warning.
14. The center and edge lines at the accident scene had been paved over for only a few days before the accident. Pursuant to G.S. 136-30.1, the Department of Transportation had 30 days from the completion of the resurfacing to repaint the center lines on U.S. 421. At the time of the accident, the condition of the road with respect to painting was not in violation of any standard, statute or regulation. National roadway standards as set out in the Manual for Uniform Traffic Control Devices did not require painted edge lines on U.S. 421 at the time of the accident. Furthermore, the condition of U.S. 421 was clearly indicated to motorists by frequent "unmarked pavement ahead" signs located at numerous locations along U.S. 421. Vasquez, upon observing the unpainted condition of U.S. 421, had notice of it and was under a duty to adjust his driving accordingly.
15. Richard Edwards, tendered by plaintiff as an expert in accident reconstruction, testified that scrubbing (and, therefore, the drop-off) caused Vasquez to lose control of his vehicle and hit the Shaw vehicle. Scrubbing is a phenomenon by which a drop-off between the paved portion of the roadway and the shoulder which prevents a vehicle's from remounting the paved area. Scrubbing creates scrub marks on the interior side of the tire at the height of the drop-off. However, the tires of the Vasquez vehicle showed no signs of scrubbing.
16. The angle of repose on the resurfaced edge of U.S. 421 at the accident site was a 45 to 60 degree angle, an angle which should allow a vehicle to remount the pavement. In addition, the last ten feet of the repaving involved a three to four inch drop with a 60 degree slope, which was an acceptable pavement edging because a driver should be able to mount the slope without losing control. At the time of the accident, the repose angle may have been 45 degrees and, therefore, even a six inch drop-off would not have been excessive.
17. When the impediment of a drop-off is removed in a scrubbing situation, the expectation is that there would be instantaneous re-entry of the tire on the road. There is no evidence of an unmountable pavement edge prior to the end of the repaving where the Vasquez vehicle re-entered the roadway. The Vasquez vehicle remounted the paved portion of the highway several feet beyond the end of the resurfacing and the drop-off.
18. After re-entering the roadway, the Vasquez vehicle crossed more than 30 feet of pavement before hitting the Shaw vehicle. This is more consistent with an oversteer by an inexperienced driver than it is with scrubbing.
19. Scrubbing did not cause Mr. Vasquez to lose control of his vehicle and hit the Shaw vehicle.
20. Mr. Edwards, plaintiff's expert, testified that hard braking creating a split-mu effect may have caused the accident. The split-mu effect occurs when the left tires of a vehicle are on the pavement and right tires are off the pavement and on turf; when there is hard braking, the difference in the coefficients of friction for each side of the vehicle causes the vehicle to twist sharply to the left. However, Trooper Zimmerman testified that there was no evidence of hard braking in this matter. Without hard braking, there can be no split-mu effect.
21. The evidence fails to establish that hard braking creating a split-mu effect caused the accident involving Ms. Shaw.
22. Vasquez informed Trooper Zimmerman that his right front wheel had dropped off the pavement and that he lost control of his vehicle. Vasquez was unable to regain control of his vehicle when he pulled it back onto the road, resulting in his collision with the Shaw vehicle. However, the evidence fails to show that Vasquez ran off the road and lost control of his vehicle because of the drop-off.
23. The greater weight of the evidence does not show that the drop-off was a proximate cause of the accident. The evidence does not show where Vasquez ran off the road, how long he traveled off the road, and whether or not his car had physical contact with the drop-off. Accordingly, even assuming some breach of duty by the Department of Transportation's named employees in failing to repair or warn of the drop-off, such breach would not be a proximate cause of the accident.
24. Vasquez failed to exercise reasonable care when he lost control of his vehicle and drove directly into the path of the Shaw vehicle. Vasquez's negligence was the sole proximate cause of the accident and the death of Mrs. Shaw.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At the time of the accident, the Department of Transportation was not negligent for failing to have fully painted center and edge lines on U.S. 421.
2. At the time of the accident, the Department of Transportation did not have actual or constructive knowledge of the drop-off.
3. At the time of the accident, the Department of Transportation was not negligent in failing to discover, repair, or place signs warning of the drop-off.
4. The drop-off was not a proximate cause of the death of Mary Ruth Shaw.
5. At the time of the accident, the Department of Transportation did not breach any duty to plaintiff which was a proximate cause of the accident. The sole proximate cause of the accident was the negligence of Vasquez.
6. There was no negligence on the part of any named officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, which proximately caused the death of Mary Ruth Shaw, and plaintiff is not entitled to recover damages from defendant. G.S. § 143-291 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall bear its own costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER